**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERESY**

_____

| | | |
|---|---|---|
| ALPHACARD SYSTEMS, LLC, | : | CIVIL ACTION |
| DISCOUNTID.COM, LLC, and ID CARD | : | |
| GROUP, LLC, | : | |
| | : | NO. 3:19-cv-20110-MAS-TJB |
| *Plaintiffs*, | : | |
| v. | : | |
| | : | |
| FERY, LLC, | : | |
| *Defendant*. | : | |

_____

**ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**
**OF DEFENDANT, FERY, LLC TO PLAINTIFFS' COMPLAINT**

Defendant, Fery, LLC ("Defendant" or "Fery"), hereby responds to the Plaintiffs' Complaint as follows:

1.      Admitted in part and denied in part.  Defendant admits that Plaintiffs are an industry-leading seller of identification products - because they are corporate alter egos of their corporate parent, Barcodes, LLC.  In further response, the Plaintiffs, together with other sister entities, dominate the ID card market which dominates the market for on-line sales of such products in the United States.  Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the remaining averments herein and, accordingly, they are denied.  Strict proof of the remaining allegations is demanded.

2.      Admitted in part and denied in part.  Defendant admits that Fery, doing business under the trade name "Bodno," is a competitor of Plaintiffs in the ID marketplace.  It is also admitted that Fery is a reasonably recent entrant into the ID card solutions and supplies business.  The remaining allegations in this paragraph are denied and strict proof thereof is demanded.

1

3.      Admitted in part and denied in part.  Defendant admits that it and Plaintiffs sell ID card products through amazon.com ("Amazon") and that they compete for sales of the same or highly similar products.  It is further admitted that search engine optimization, a technical placement tool properly used by all online merchants, is an important factor in the marketing of products and services.  The remaining allegations in this paragraph are denied.  By way of further response, the Plaintiffs primarily sell their products and services through their own free-standing websites and seek to curtail their own and their competitors' sales on Amazon by willfully interfering with competitors with the intent of driving them off the Amazon platform, and thereby inducing Amazon's customers to divert their transactions to Plaintiff's websites, in breach of their contractual obligations to Amazon.

4.      Denied.  Defendant specifically denies any and all averments that it engages in the practice of proffering "fake customer reviews" and allegations that it has engaged in any unlawful actions or that it has damaged Plaintiffs in any way.  Strict proof thereof is demanded.  By way of further response, the contention that Plaintiffs' "reputations" have been harmed is risible as Plaintiffs, together with their sister entities owned by their common parent, Barcodes, Inc., unlawfully mislead the public and consumers to believe that the Plaintiffs and their related entities are multiple sellers competing in the relevant market over which, in truth, they collectively exercise an intentional single and unified monopoly power.

5.      Denied.  Defendant specifically denies any and all averments of that it engages in the practice of false and deceptive advertising or has manipulated online customer reviews.  It is further denied that Defendant is or has been the target of any enforcement action by the FTC.  The remaining allegations in this paragraph are also denied and strict proof thereof is demanded.

6.     Denied.   Defendant specifically denies any and all averments that it ever engaged in false advertising scheme or that it has violated federal or state law.   Strict proof thereof is demanded.   Defendant also denies that Plaintiffs are entitled to any damages. Contrary to their contentions, the baseless legal action instituted against Defendant herein reflects an anti-competitive scheme in violation of Section 2 of the Sherman Act for which damages are due to the Defendant.  *See* Defendant's Counterclaims *infra*.

7.     Denied. Defendant lacks sufficient information to either admit or deny the averments herein and, accordingly, they are denied.   By way of further response, upon information and belief, AlphaCard is a wholly owned subsidiary of Barcodes, Inc. and, together with Barcodes Inc. and sister entities, colludes to monopolize, or to attempt to monopolize, the market for on-line sales of identification products and to deceive consumers as to the true identity of the businesses with which they appear to be doing business.

8.     Denied.   Defendant lacks sufficient information to either admit or deny the averments herein and, accordingly, they are denied.   By way of further response, upon information and belief, Discount ID is a dissolved entity with no capacity to sue or be sued.  By way of further response, when DiscountID existed, it was a subsidiary of and operated as an instrumentality of AlphaCard from AlphaCard's place of business.  It existed for the purpose of misleading consumers as to the true identity of the businesses with which customers appear to be doing business and to collude in the monopolistic misconduct of Plaintiffs and their sister entities, led by their corporate parent Barcodes, Inc. and as directed by the Corporate owner of Barcodes, Inc., Odyssey Investment Partners, LLC ("Odyssey").[1]

---

[1]/     According to the website of Odyssey, at least three of Odyssey's Directors and Principles have seats on the Board of Barcodes, Inc.

9.      Denied.   Defendant lacks sufficient information to either admit or deny the averments herein and, accordingly, they are denied.   By way of further response, upon information and belief, ID Card Group is a subsidiary of and operates as an instrumentality of AlphaCard from AlphaCard's place of business.   It exists for the purpose of misleading consumers as to the true identity of the businesses with which customers appear to be doing business and to collude in the monopolistic misconduct described in paragraph 8 above and in Defendant's Counterclaims *infra*.

10.      Admitted.

11.      Denied. The averments herein constitute conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, it is denied and strict proof thereof is demanded.

12.      Denied. The averments herein constitute conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, it is denied and strict proof of the allegations in this paragraph is demanded.

13.      Denied. The averments herein constitute conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, it is denied and strict proof of the allegations in this paragraph is demanded.

14.      Admitted in part and denied in part.   Defendant admits that Plaintiffs do, or in the case of Discount ID did, sell identification card products. Despite reasonable investigation,

4

Defendant lacks sufficient information to either admit or deny the remaining averments and, accordingly, they are denied.  Strict proof of the allegations in this paragraph is demanded.

15.     Denied. Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the remaining averments and, accordingly, they are denied.  Strict proof of the allegations in this paragraph is demanded.

16.     Denied. Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the remaining averments and, accordingly, they are denied.  Strict proof of the allegations in this paragraph is demanded.  In further response and on information and belief, Plaintiffs avoid selling in the Amazon Marketplace insofar as they are able, attempt to obstruct others from using Amazon Marketplace to sell to the market in an effort to limit competition, and attempt to induce Amazon's customers to divert purchases from Amazon to the Plaintiff's own websites in breach of their contractual agreement with Amazon.

17.     Denied.  Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the remaining averments and, accordingly, they are denied with strict proof thereof demanded.

18.     Denied.  Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

19.     Denied.  Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.  By way of further response, Plaintiffs broadly misstate the operations of Amazon Marketplace and the listing protocols therein.

20.     Denied.     Despite    reasonable    investigation,    Defendant    lacks    sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

21.     Denied.     Despite    reasonable    investigation,    Defendant    lacks    sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

22.     Denied.     Despite    reasonable    investigation,    Defendant    lacks    sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

23.     Denied.     Despite    reasonable    investigation,    Defendant    lacks    sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

24.     Denied.     Despite    reasonable    investigation,    Defendant    lacks    sufficient information to either admit or deny the remaining averments and, accordingly, the allegations in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

25.     Denied.     Despite    reasonable    investigation,    Defendant    lacks    sufficient information to either admit or deny the remaining averments and, accordingly, the allegation in this paragraph are denied.  Strict proof of the allegations in this paragraph is demanded.

26.     Denied as stated.  Defendant admits that it sells identification card products on Amazon Marketplace and that it competes with Plaintiffs, and its sister companies controlled by other instrumentalities, Barcodes and Odyssey, all of which operate in the unlawful deceptive guise of multiple, unrelated, competing vendors.

27.     Denied.  It is denied that Defendant engages in any form of false advertising or lists phony customer reviews on the Amazon platform.  It is admitted only that actual customers have provided glowing reviews of Defendant's products and services.  Strict proof thereof is demanded.

28.     Denied.  It is denied that Defendant engages in any form of false advertising or lists phony customer reviews on the Amazon platform.  It is admitted only that actual customers have provided glowing reviews of Defendant's products and services.  Strict proof thereof is demanded.

29.     Denied.   Despite reasonable investigation, Defendant lacks sufficient information to either admit or deny the validity of accuracy of the depicted graph of what it purports to demonstrate.  Strict proof of the allegations in these paragraphs is demanded.

30.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

31.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

32.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

33.     Denied.  Defendant specifically denies any and all averments in this paragraph and its subparts.   Strict proof of all averments herein is demanded.

34.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

35.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

36.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

37.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

38.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

39.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  In further response, it is denied that Defendant has caused any harm to the Plaintiffs other than engaging in fair and lawful competition with Plaintiffs and their sister entities.

40.     Denied as stated.  Defendant admits that, in an escalation of its attempt to limit competition in the Amazon Marketplace, Plaintiffs sent a letter with baseless accusations and demands.  By way of further response, Defendant specifically denies any and all averments made by Plaintiffs of a false advertising scheme and false reviews, which were the purported basis for the letter.  Strict proof thereof is demanded

41.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

42.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further answer, Defendant and counsel specifically deny that Defendant has engaged in any fake advertising scheme or the making of misleading statements.

43.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further answer, Defendant specifically denies that it has engaged in any fake advertising scheme or the making of misleading statements.

44.     Denied. The averments constitute conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, same is denied.  Strict proof of the averments in this paragraph is demanded.

45.     Defendant incorporates each and all of its responses in this Answer as though fully set further herein.

46.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further answer, Defendant specifically denies that it has engaged in any fake advertising scheme or the making of misleading statements.

47.     Denied. The averments constitute conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, same is denied.  Strict proof thereof is demanded. By way of further response, Defendant specifically denies any and all averments of false reviews, with strict proof thereof demanded.

48.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further response, Defendant specifically denies that it has engaged in any fake advertising scheme or the making of misleading statements.

49.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further response, Defendant specifically denies that it has engaged in any fake advertising scheme or the making of misleading statements.

50.     Denied.   The averments constitute conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, same is denied.  Strict proof thereof is demanded. By way of further response, Defendant specifically denies any and all averments of false reviews, with strict proof thereof demanded.

51.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further answer, Defendant specifically denies that it has engaged in any fake advertising scheme or the making of misleading statements.

52.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  By way of further answer, Defendant specifically denies that it has engaged in any fake advertising scheme or the making of misleading statements.  It is further denied that Plaintiffs have suffered any damages as a result of any alleged actions of Defendant.

53.     Denied.  The averment herein constitutes a conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, the allegations in this paragraph are specifically denied.  Strict proof thereof is demanded.

54.     Defendant incorporates each and all of its responses in this Answer as though fully set further herein.

55.     Denied.  The averment herein constitutes a conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, the allegations in this paragraph are specifically denied.  Strict proof thereof is demanded.

56.     Denied. The averment herein constitutes a conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further response, to the extent any averment herein is deemed factual in nature, same is denied with strict proof thereof demanded.

57.     Denied. The averment herein constitutes a conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further response, to the extent any averment herein is deemed factual in nature, same is denied with strict proof thereof demanded.  By way of further response, Defendant specifically denies any and all averments of a false advertising scheme and false reviews, and strict proof thereof is demanded.

58.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.

59.     Denied.  Defendant specifically denies any and all averments in this paragraph. Strict proof thereof is demanded.  In further response, it is denied that Defendant has caused any harm to the Plaintiffs other than engaging in fair and lawful competition with Plaintiffs and their sister entities.

60.     Denied.  The averment herein constitutes a conclusion of law to which no further response is required under the applicable Federal Rules of Civil Procedure. By way of further answer, to the extent any averment herein is deemed factual in nature, the allegations in this paragraph are specifically denied and strict proof thereof is demanded.

## DEMAND FOR JURY TRIAL

Defendant demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Defendant respectfully submits that judgment must be entered in its favor and against the Plaintiffs on all counts in Plaintiffs' Complaint, with an award of reasonable attorney's fees and costs of litigation awarded to it by the Court.

## AFFIRMATIVE DEFENSES

1.      Plaintiffs' Complaint fails to state a claim upon which relief may be granted.

2.      The claims asserted in Plaintiffs' Complaint are barred in whole or in part by the doctrines of independent development and/or independent creation.

3.      Plaintiffs' Complaint is barred in whole or in part by the doctrines of waiver, estoppel, and/or laches.

4.      Plaintiffs' Complaint is barred in whole or in part by the doctrine of unclean hands.

5.      Plaintiffs' Complaint is barred in whole or in part by the doctrine of innocent receipt.

6.      Plaintiffs' Complaint is barred in whole or in part by the First Amendment to the United States Constitution.

7.      Plaintiffs' Complaint is barred in whole or in part because to the extent Defendant made or published any alleged statements, those statements were true.

8.      Plaintiffs' Complaint is barred in whole or in part due to Plaintiffs' failure to mitigate their alleged damages, if any.

9.      Plaintiffs' Complaint is barred in whole or in part by Plaintiffs' fraud.

10.     Plaintiffs' Complaint is barred in whole or in part due to an intervening and/or superseding cause.

11. Plaintiffs' Complaint is barred in whole or in part by the acts and/or omissions of third parties, whose conduct was the proximate cause of Plaintiffs' alleged damages.

12. Plaintiffs' Complaint is barred in whole or in part because Defendant's conduct did not and does not create a likelihood of confusion.

13. Plaintiffs' Complaint is barred in whole or in part because any alleged injury to Plaintiffs is not immediate or irreparable, and Plaintiffs have an adequate remedy at law.

14. Plaintiffs' Complaint is barred in whole or in part due to Plaintiffs' failure to plead their special damages, if any, with particularity.

15. Defendant hereby gives notice to Plaintiffs that until Defendant avails itself of its right of discovery, it cannot determine whether any further and/or additional affirmative defenses will be necessary and/or appropriate in this matter, and it therefore reserves its right to add such other affirmative defenses as may become known to Defendant through the course of discovery and investigation of this matter.

WHEREFORE, Defendant respectfully requests an Order dismissing Plaintiffs' Complaint with prejudice with an award of reasonable attorney's fees and costs of litigation, and for such other and further relief as the Court deems fair and just.

## COUNTERCLAIMS

Defendant/Counterclaim Plaintiff Fery, LLC ("Fery"), for its counterclaims for trebled compensatory damages and injunctive relief under the antitrust laws of the United States, and for compensatory and punitive damages and injunctive relief under state law, against Plaintiffs/Counterclaim Defendants AlphaCard Systems, LLC ("AlphaCard"), DiscountID.com LLC ("DiscountID"), and ID Card Group LLC ("ID Card Group") alleges the following:

## COUNTERCLAIM DEFENDANTS

1.     Counterclaim Defendant AlphaCard Systems, LLC, is Delaware corporation with a principal place of business at 17858 SW Upper Boones Ferry Road, Portland, OR 97224. AlphaCard is, on information and belief, a subsidiary of non-party monopolist Barcodes, LLC which, in turn, is controlled by Odyssey Investment Partners LLC ("Odyssey").

2.     Counterclaim Defendant DiscountID.Com LLC was an Oregon corporation with a principal place of business at 17858 SW Upper Boones Ferry Road, Portland, OR 97224. On information and belief, DiscountID is a dissolved entity.  However, as Plaintiffs represent to the Court that DiscountID is a currently existing legal entity capable of suing and being sued in this action, Fery counterclaims against DiscountID.Com based on Plaintiffs' representation of present corporate existence which Defendant believes is fraudulent. When DiscountID existed, its registered agent was AlphaCard.  DiscountID.com was, on information and belief, a subsidiary of non-party monopolist, Barcodes, LLC which, in turn, is controlled by Odyssey.

3.     Counterclaim Defendant ID Card Group, LLC, is an Oregon corporation with a principal place of business at 17858 SW Upper Boones Ferry Road, Portland, OR 97224. Its registered agent is AlphaCard.  ID Card Group is, on information and belief, a subsidiary of non-party monopolist, Barcodes, LLC which, in turn, is controlled by Odyssey.

## NONPARTY PARTICIPANTS

4.     Odyssey Investment Partners, LLC ("Odyssey") is a Delaware corporation with a principal place of business at 590 Madison Avenue, 39th Floor, New York, NY 10022.

5.     Barcodes, LLC, d/b/a Barcodes, LLC ("Barcodes") is a Delaware corporation with a principal place of business at 200 W. Monroe Street, Chicago, IL 60606.  Barcodes is, on information and belief, the owner of ID Superstore, an Oregon business operating under an assumed name at a principal place of business at 17858 SW Upper Boones Ferry Road, Portland,

OR 97224.  Barcodes is, on information and belief, wholly owned by Odyssey.  Barcodes habitually operates under assumed names including Zanyprint, Activeraco Industries, Activeone Source Industries, Activebarcodesinc, Activesecurity Hardware Discount, Activenational Barcode, Activeit Planet, Activeall Things Pos, Activebarcode Deals, Activebarcode Discount, Activebarcode Giant, Activebarcode Megastore, Activebarcode Planet, Activebarcode Sales, Activebarcode Scanner Central, and Activepoint Of Sale Zone.

6.      Plasco, LLC ("Plasco") is a Florida Corporation doing business as Plasco ID.  Its principal place of business is 5830 NW 163rd Street, Miami, FL 33169.  Plasco is, on information and belief, a subsidiary of Barcodes which, in turn, is controlled by Odyssey.

7.      IDW, LLC ("IDW") is a Florida corporation.  IDW does business under the assumed name ID Wholesaler with principal places of business at 5830 NW 163rd Street, Miami Lakes, FL 33014 and 7003 West Lake Street, # 400, St Louis Park, MN 55426.  The manager of IDW is Plasco.  IDW is, on information and belief, a subsidiary of Barcodes which, in turn, is controlled by Odyssey.

8.      Southeast ID, LLC ("Southeast ID") is a Delaware corporation with a principal place of business at 5830 NW 163rd Street, Miami Lakes, FL 33014. The registered agent of Southeast ID is Plasco.  Southeast ID is, on information and belief, a subsidiary of Barcodes which, in turn, is controlled by Odyssey.

9.      IDZ, LLC dba ID Zone ("IDZ") is a Florida corporation with principal places of business at 5830 NW 163rd Street, Miami Lakes, FL 33014 and 7003 West Lake Street, # 400, St Louis Park, MN 55426. The Manager of IDZ is Plasco.  IDZ is, on information and belief, a subsidiary of Barcodes which, in turn, is controlled by Odyssey.

## COUNTERCLAIM DEFENDANTS AND NON-PARTY PARTICIPANTS
## FORM A SINGLE "BARCODES ENTERPRISE"

10.     Barcodes publicly holds out AlphaCard as one of its "Barcodes Group Company" and AlphaCard is, on information and belief, a wholly-owned subsidiary of Barcodes.

11.     AlphaCard owns and controls ID Card Group and does, or did during its existence, own and control Discount ID.  While misleading the public by holding themselves out as separate companies, the three (3) entities (AlphaCard, Discount ID, and ID Card Group) in fact operated as one business at 17858 SW Upper Boones Ferry Road, Portland, OR 97224.  In addition, AlphaCard operated a fourth pseudo-business, ID Superstore, at the same location.

12.     Plasco owns and controls IDW, Southeast ID, and IDZ.  While misleading the public by holding themselves out as separate companies, the three (3) entities in fact operated as one business at 5830 NW 163rd Street, Miami Lakes, FL 33014 and 7003 West Lake Street, # 400, St Louis Park, MN 55426. SouthEast ID was formerly an independent photo identification products retailer in Deerfield Beach, Florida.  In 2016, Plasco acquired SouthEast ID, closed its Deerfield Beach operations, and purported to continue its operations but had, in truth, incorporated its operations into its Miami Lakes operation.  In addition, Plasco acquired other identification products businesses, shut them down, and incorporated their assets into its existing operations.  While the full extent of these acquisitions is presently unknown, in 2016 Plasco acquired BadgeExpress, an Asheville, North Carolina-based provider of security and access cards and badging systems and, on information and belief, incorporated its business into that of its IDW subsidiary.

13.     On information and belief, Odyssey acquired Barcodes in January 2019.

14.     On information and belief, Barcodes, acting as a portfolio company of Odyssey, acquired Plasco from BV Investment Partners in August 2019.

16

15.     The counterclaim defendants and nonparty participants act as a single enterprise under the immediate control of Barcodes and the ultimate control of Odyssey for purposes of competing in their ID card market and restraining competition of others therein.

**THE BARCODES ENTERPRISE HAS, OR ATTEMPTS TO ACHIEVE BY EXCLUSIONARY CONDUCT, MONOPOLY POWER IN THE MARKET FOR ON-LINE SALES OF ID PRODUCTS IN THE UNITED STATES**

16.     This case involves ongoing and anticompetitive activity among Counterclaim Defendants AlphaCard, DiscountID (if, as Plaintiffs represent, it exists), and ID Card Group with the aid of non-Defendant participants  Odyssey, Barcodes, Plasco ID, IDW, Southeast ID, and IDZ (collectively, the "Barcodes Enterprise"), to eliminate substantial competition in the relevant market for on-line direct sales to commercial and governmental customers of identification and security control equipment and supplies including computer software such as ID printers, bar code labels and scanners and related identification products ("ID Products") in the United States.

17.     On information and belief, the market for direct online sales of ID printers and related security control equipment and supplies to commercial and government customers is the geographic market of the United States, of which the Barcodes Enterprise controls in excess of seventy percent (70%).

18.     Secure from the threat of effective competition, the Counterclaim Defendants (AlphaCard, Discount ID, and ID Card Group), with the aid of the Barcodes Enterprise, have historically charged prices above competitive levels for their products, including by charging exorbitant service fees for routine customer support in setting up and using the products.  Most customers require at least some customer support, especially with new purchases. Absent monopolistic control, such charges for routine customer support services would be provided to customers as a matter of course without additional payments required.  By exploiting its

monopoly, the Barcodes Enterprise has historically added hundreds of dollars above competitive prices to customers' bills.

19.     For small and medium-sized organizations, there are no ready substitutes for on-line sales of ID Products.  The products are too specialized and complicated to be sold in substantial amounts by brick and mortar office supply stores.  But they are not sufficiently costly and esoteric to be sold in one-off, in-person transactions (except in bulk for very large corporate and government purchasers).  Most sales are made to customers directly through on-line sales with telephonic consultation and after-sale customer service.  There are no effective alternatives to most customers in the relevant marketplace.

20.     The Counterclaim Defendants, with this aid of the Barcodes Enterprise, sells primarily on Google, using their own free-standing websites that they deceptively present to customers as numerous unrelated businesses, thereby causing the anticompetitive policies of the Barcodes Enterprise to appear as simulacra of genuine market conditions.

21.     The Counterclaim Defendants, with the aid of the Barcodes Enterprise, willfully acquired and attempt to strengthen that monopoly power by engaging in exclusionary conduct. At the time Plasco ID, Barcodes, and ultimately Odyssey, were taking control of competitors, either through a merger or an acquisition, to consolidate the relevant market under Barcodes' control by acquiring formerly competing ID Products vendor websites, Fery offended the monopolizing Barcodes Enterprise's scheme by entering the market in which the Barcodes Enterprise was attempting to eliminate competition.

22.     Fery's innovative entry into the ID Products online sales market for high-quality ID Products sold directly to consumers through the online sales venue, Amazon Marketplace,

promised to substantially increase competition to the Barecodes Enterprise, including the Counterclaim Defendants in the on-line ID Products market.

23.     Selling through the Amazon Marketplace is a uniquely efficient distribution channel for new entrants into any market, including the ID products market, and is the best means for market entrants who do not have established, free-standing websites able to compete with the Barcodes Enterprise in the sale of those products.  Amazon provides the platform and interested customer traffic, thereby sparing market entrants up-front programming, server, and advertising costs. Amazon Marketplace then receives revenue from seller sales, which is less burdensome to market entrants than large, up-front capital costs in advance of sales. That is precisely why the Barcodes Enterprise seeks to exclude Amazon Market competition. The rise of Amazon Marketplace, an online marketplace directly connecting buyers and sellers of merchandise, provided the means for new entrants to surmount the distribution barrier to entry into the relevant ID Products market.

24.     Online sales of any ID Products through Amazon Marketplace threatened and continues to threaten to erode the barrier to entry which the Barcodes Enterprise seeks to maintain and exploit.  Accordingly, the Barcodes Enterprise's objective is to curtail all sales of ID products on Amazon Marketplace.  While some of its component brands responded to Fery's entry into the market by also listing merchandise on Amazon Marketplace, the Counterclaim Defendants, with the aid of the Barcodes Enterprise, did not intend to compete fairly with Fery on that platform.  In equally duplicate fashion and with astonishing dishonesty, the Counterclaim Defendants, with the aid of the Barcodes Enterprise, continue to willfully breach their contractual obligations under the Amazon Marketplace Rules of Conduct by covertly urging

Amazon customers to divert their purchases from the Amazon Marketplace to the various Barcodes Enterprise's websites on Google.

25.     In direct response to Fery's entry into the market for online sales of ID Products, the Barcodes Enterprise has attempted to unlawfully drive Fery, one of very few effective competitors of the Barcodes Enterprise, out of the ID Products market.

26.     In one overt act in support of its monopolizing effort, the Counterclaim Defendants, with the aid of the Barcodes Enterprise, interfered with Fery's relationship with product manufacturers by disparaging allegations to manufacturers that Fery's sales on the Amazon Marketplace were illegal. Those defamatory statements were made to acquire and maintain monopoly power by inducing manufacturers to refrain from dealing with Fery.  The disparagement was false, material, was likely to induce reliance, was made to suppliers who had no knowledge of the true facts relating to Fery, was made for an extended period of time, and was not easily refuted by Fery.

27.     Fery alleges, on information and belief, that at least one manufacturer, refused to make sales to Fery, after having previously done so, because the Barcodes Enterprise induced it to refrain from such dealing.

28.     In another overt act of the monopolizing effort, the Counterclaim Defendants, with the aid of the Barcodes Enterprise, has brought the present frivolous allegations against Fery in this Court for the sole and unlawful purpose of driving Fery, its principal remaining competitor, out of the relevant market for on-line sales.

29.     The Counterclaim Defendants' objective is not to win the current baseless litigation, but rather, their intention is to protect and strengthen their monopoly power by burdening Fery with crushing legal expenses.

30.     There is a dangerous probability that the Counterclaim Defendants, with the aid of the Barcodes Enterprise, will succeed in maintaining monopoly control over the on-line market for ID Products in the United States.   They already exercise monopolistic power over manufacturers who are subject to their pressure because of their dominance in the relevant online market, and their ongoing actions to control competition on the marketplace, including the Amazon Marketplace.   They achieve that end by excluding market entrants and by diverting Amazon's customers to their own website platforms in breach of their contractual agreements with Amazon thereby eliminating the primary threat of new ID card sales companies to their ongoing market dominance.

### FIRST COUNTERCLAIM
### ATTEMPTED MONOPOLIZATION IN VIOLATION OF
### THE SHERMAN ANTITRUST ACT

31.     The allegations of the forgoing paragraphs above are incorporated by reference as though fully set further herein.

32.     The Counterclaim Defendants, with the aid of the Barcodes Enterprise, have engaged in the conduct described herein with the specific intent to monopolize the relevant market for ID card machines, supplies, and services.

33.     The Counterclaim Defendants, with the aid of Barcodes Enterprise, possess a monopoly share of the relevant market and have the ability to exclude competition and raise prices above a competitive level.

34.     The Counterclaim Defendants, with the aid of Barcodes Enterprise, have willfully acquired and maintained monopoly power in the relevant market through restrictive or exclusionary conduct, without any legitimate business justification. Their restrictive and exclusionary conduct includes, in part, disparaging Fery to suppliers to induce them not to deal

with Fery and bringing baseless litigation with the objective of removing competition from Amazon Marketplace.

35.     There is a dangerous probability that the Counterclaim Defendants, with the aid of the Barcodes Enterprise, will succeed in their attempts keep other independent ID card sellers out of  the relevant market and maintain a monopoly position.

36.     The action of the Counterclaim Defendants, in aid of the Barcodes Enterprise conduct alleged herein, violates Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2 and, as a result of such unlawful conduct, competition in the relevant market has been and will further be suppressed.

37.     Fery has sustained the type of injury that the antitrust laws were intended to prevent and that which flows from the anticompetitive and exclusionary characteristics that makes the Counterclaim Defendants and the Barcodes Enterprise's conduct unlawful.

38.     As a result of the Counterclaim Defendants and the Barcodes Enterprise's unlawful and anticompetitive conduct, Fery has suffered or will suffer substantial injury and damages. The Counterclaim Defendants' actions in aid of the Barcodes Enterprise's actions have also caused, and unless enjoined will continued to cause, irreparable injury and damage to Fery, for which Fery has no adequate remedy at law, therefore entitling Fery to injunctive relief.

**SECOND COUNTERCLAIM**
**MONOPOLIZATION IN VIOLATION OF THE SHERMAN ANTITRUST ACT**

39.     The allegations of the forgoing paragraphs above are incorporated by reference as though fully set further herein.

40.     On information and belief, the Barcodes Enterprise controls over seventy percent (70%) of the market for on-line sales of ID Products in the United States.

22

41.     The Barcodes Enterprise's sales affect interstate commerce and its antitrust violations described in this counterclaim have and are having a substantial effect on interstate commerce.

42.     On-line sales of ID Products in the United States are a distinct product market. There is no readily-available alternative for small and medium sized businesses and organizations.

43.     Fery is one of very few remaining competitors with the Barcodes Enterprise in the relevant markets.

44.     On information and belief, the Barcodes Enterprise possesses a monopoly share of the relevant market and has the ability to exclude competition and raise prices above a competitive level.

45.     The Counterclaim Defendants have aided the Barcodes Enterprise to willfully acquire and maintain its monopoly power in the relevant market through restrictive or exclusionary conduct, without any legitimate business justification. The Counterclaim Defendants' actions in aid of the Barcodes Enterprise 's restrictive and exclusionary conduct: includes taking control of competitors, either through a merger or an acquisition, to consolidate the relevant market under Barcode's control by acquiring formerly competing ID Products vendor websites; deceiving customers by misrepresenting controlled on-line retail platforms as if they were independent, competing vendors; and maintaining barriers to competitor's entry into the market by driving competitors out of the Amazon Marketplace by misconduct including inducing suppliers to cut off competitors by disparagement, filing baseless litigation to harass competitors, and by diverting Amazon's customers to the Barcodes Enterprise's free-standing websites in breach of the Enterprise's contractual agreements with Amazon.

46.     On information and belief, the Counterclaim Defendants, in aid of the Barcodes Enterprise, have pursued baseless Lanham Act litigation, such as herein, and/or the threat of same, against competitors with an anticompetitive purpose and effect.

47.     The restrictive and exclusionary conduct alleged herein violates Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2 and, as a result of such unlawful conduct, competition in the relevant market has been suppressed.

48.     Fery has sustained the type of injury that the antitrust laws were intended to prevent and that flows from the anticompetitive and exclusionary characteristics that makes the Barcodes Enterprise's conduct unlawful.

49.     As a result of the substantial unlawful and anticompetitive conduct of the Counterclaim Defendants, Fery has suffered or will suffer substantial injury and damages. The Counterclaim Defendants' actions also have caused, and unless enjoined will continue to cause, irreparable injury and damage to Fery for which Fery has no adequate remedy at law, therefore entitling Fery to injunctive relief.

### THIRD COUNTERCLAIM
### CONSPIRACY TO MONOPOLIZE IN VIOLATION OF
### THE SHERMAN ANTITRUST ACT
### (PLEADED IN THE ALTERNATIVE)

50.     The allegations of the forgoing paragraphs above are incorporated by reference as though fully set further herein.

51.     As stated above, Fery believes, and therefore avers, that the various parties and non-parties which form the Barcodes Enterprise constitute a single entity for purposes of antitrust law because they are all parents and subsidiaries which are incapable of conspiring with themselves.

52.     If the various parties and non-parties which Fery alleges form the Barcodes Enterprise are not, in fact, parents and subsidiaries incapable of conspiring with themselves, then Fery pleads, in the alternative, a claim against the Counterclaim Defendants for conspiracy to monopolize in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 .

53.     The Counterclaim Defendants AlphaCard, DiscountID (if it exists), and ID Card Group conspired among themselves and with non-defendants Odyssey, Barcodes, Plasco ID, IDW, Southeast ID, and IDZ (collectively, the "Barcodes Conspirators") to monopolize the market for on-line sales of  ID Products in the United States.

54.     The Barcodes Conspirators committed overt acts in furtherance of the conspiracy by taking control of competitors, either through a merger or an acquisition, to consolidate the relevant market under Barcode's control by acquiring formerly competing ID Products vendor websites; deceiving customers by misrepresenting controlled on-line retail platforms as if they were independent, competing vendors; maintaining barriers to competitor's entry into the market by driving competitors out of the Amazon Marketplace by misconduct including inducing suppliers to cut off competitors by disparagement; filing baseless litigation to harass competitors; and by diverting Amazon's customers to the Barcodes Enterprise's free-standing websites in breach of the Enterprise's contractual agreements with Amazon.

55.     As to conspiracy to monopolize under Section 2 of the Sherman Act, the Barcode Conspirators have had and continue to have a specific intent to monopolize.

56.     Fery has sustained the type of injury that the antitrust laws were intended to prevent and that flows from the anticompetitive and exclusionary characteristics that makes the Barcode Conspirators conduct unlawful.

57.     As a result of the Barcodes Enterprise's unlawful and anticompetitive conduct, Fery has suffered or will suffer substantial injury and damages. The Barcode Conspirators actions also have caused, and unless enjoined will continued to cause, irreparable injury and damage to Fery for which Fery has no adequate remedy at law, therefore entitling Fery to injunctive relief.

## FOURTH COUNTERCLAIM
## INTENTIONAL INTERFERENCE WITH EXISTING BUSINESS RELATIONS
## IN VIOLATION OF NEW JERSEY LAW

58.     The allegations of the forgoing paragraphs above are incorporated by reference as though fully set further herein.

59.     Fery has a protectable interest in the continuation of its relationship as a distributor of the products of several manufactures and has a protectable interest in maintaining its reputation as a competent and caring seller of those products to customers.

60.     The Counterclaim Defendants (AlphaCard, DiscountID (if it exists), and ID Card Group), through their employees and the Barcodes Enterprise employees, have intentionally sought to interfere with Fery's existing contractual rights with the manufacturers of ID card machines and supplies as well as customers of those products.

61.     The Counterclaim Defendants, as parties to the Barcodes Enterprise, took actions to interfere with other relationships by disparaging Fery with the specific intent of preventing the contractual relationships from continuing, thereby causing economic harm to Fery.

62.     The Counterclaim Defendants had no privilege or justification to interfere with Fery's existing business relationships with manufacturers and customers.

26

63.    Fery had a reasonable expectation that it would continue to enjoy the benefits of its existing and potential contractual relationships with its suppliers and customers but for the interference of the Counterclaim Defendants.

64.    The interference by the Counterclaim Defendants has harmed Fery both by reducing the number and variety of products it could offer its customers and by disparaging customers from dealing with Fery, thereby perpetuating the Barcodes Enterprise's monopoly in the relevant on-line purchase market.

65.    As a result of those actions, Fery has been caused great economic harm.

66.    The conduct of the Counterclaim Defendants is outrageous, malicious, wanton, willful, and oppressive.  Fery is therefore entitled to an appropriate award of punitive damages.

67.    The actions of the Counterclaim Defendants have caused, and unless enjoined will continued to cause, irreparable injury and damage to Fery for which Fery has no adequate remedy at law, therefore entitling Fery to injunctive relief.

### RELIEF REQUESTED

For the above reasons, Fery, LLC asks for judgment as follows:

A.    A declaration and judicial determination that the conduct of Barcodes Enterprise is unlawful under Section 2 of the Sherman Act, 15 U.S.C. § 2;

B.    Awarding Fery, LLC the damages to which it is entitled, including enhanced, punitive, or treble damages under 15 U.S.C. § 15(a), or other law;

C.    Dismissing with prejudice the complaint against Fery, LLC;

D.    Awarding Fery, LLC its attorneys' fees and costs pursuant to 15 U.S.C. § 15(a), or other law;

E.    An award of punitive damages;

F.      Entering an injunction to restrain and enjoin the Counterclaim Defendants, and their parents, affiliates, subsidiaries, officers, agents, servants, employees, and all those persons acting in concert with them, and who have actual notice of the order or judgment, from engaging in anticompetitive and predatory conduct in violation of the Sherman Act, including without limitation pursuing this lawsuit against Fery, LLC.

G.      For any other relief this Court deems appropriate.

**JURY DEMAND**

Fery, LLC requests a trial by jury of the issues so triable herein.

**Respectfully submitted,**

**SPECTOR GADON ROSEN VINCI P.C.**

BY:     _/s/ Heather M. Eichenbaum_
**HEATHER M. EICHENBAUM**
**ALAN B. EPSTEIN**
**BRUCE BELLINGHAM**
Seven Penn Center - 7th Floor
1635 Market Street
Philadelphia, PA  19103
215-241-8856/215-531-9129 (fax)
heichenbaum@sgrvlaw.com
Counsel for Defendant, Fery LLC

Dated:  September 11, 2020

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I, **HEATHER M. EICHENBAUM**, attorney for the Defendant, Fery LLC, hereby certifies that a true and correct copy of the foregoing Answer with Affirmative Defenses and Conterclaims was electronically filed with the United States District Court for the District of New Jersey and thereby served electronically via the Court's filing system on all counsel of record on the date set forth below.


/s/ *H.M.Eichenbaum*
Heather M. Eichenbaum, Esquire


Dated: September 11, 2020


3213544